UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Wanda Sanville,

      Plaintiff,

      v.                                        Civil Action No. 2:16-cv-251

Commissioner of Social Security,

      Defendant.

## OPINION AND ORDER
(Docs. 17, 24)

Plaintiff Wanda Sanville brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Pending before the Court are Sanville's motion to reverse the Commissioner's decision (Doc. 17), and the Commissioner's motion to affirm the same (Doc. 24). For the reasons stated below, Sanville's motion (Doc. 17) is granted in part and denied in part; the Commissioner's motion (Doc. 24) is granted in part and denied in part; and the matter is REMANDED for further proceedings and a new decision.

## Background

Sanville was 35 years old on her alleged disability onset date of December 31, 2004. She attended school through the eighth grade. (AR 534.) She had learning problems in school and was in special education classes. (*Id.*) She has worked as a cook/server at a fast food restaurant, a cashier/stockperson at a convenience store, and a machine operator at a laundromat. (*Id.*; AR 224–25, 716.)

Sanville is divorced and has no children. (AR 534.) She was homeless for several years prior to 2010, but in July 2010, she was living with her fiancé in an apartment in Bradford, Vermont. (*Id.*) Neither Sanville nor her fiancé was working at the time; they relied on SSI, worker's compensation benefits, and food stamps to survive. (*Id.*) Sanville does not drive and has a history of two arrests for DWI. (AR 533–34.) Since she was in her twenties, Sanville has had problems with alcohol abuse; and she has suffered withdrawal symptoms including seizures and delirium tremens, for which she was hospitalized in 2008. (AR 534.) At the May 2014 administrative hearing, however, Sanville testified that she had stopped drinking four years earlier. (AR 725.)

Sanville had a stroke in 2011, and since then she has suffered from dizziness, headaches, and memory problems. At the administrative hearing, Sanville testified that the stroke resulted in her experiencing: numbness on the left side of her body, particularly her left arm and leg, causing her to fall; difficulty reaching in all directions with her left arm; occasional inability to feel/pick up small objects with her left arm; daily migraine headaches; and regular dizzy spells lasting ten to twenty minutes at a time. (AR 717–23.) Sanville also suffers from anxiety, posttraumatic stress disorder (PTSD), and depression. (AR 616.)

In March 2013, Sanville's daily activities consisted of remodeling her home, taking care of her many animals, painting, and doing word problems. (AR 615.) She reported having no physical limitations in her ability to engage in physical care activities such as dressing and grooming; and she was able to cook, shop, do errands, and attend appointments. (*Id.*) She did not drive because she did not have

a license.  (*Id.*)  She reported that she was comfortable with face-to-face contact with people but sometimes experienced anxiety "out of the blue."  (AR 616.)  More recently, Sanville testified that on a typical day, she cares for her animals, does household chores and cooks meals with her husband's help, and grocery shops with her husband.  (AR 726.)

On October 12, 2012, Sanville filed DIB and SSI applications alleging disability as of December 31, 2004, due to the following physical and mental health issues: symptoms of her stroke including seizures, dizziness, and headaches; a left shoulder impairment; PTSD; anxiety; and depression.  (AR 82–119, 133.)  About two weeks later, the DIB application was denied on the basis of res judicata. (AR 39–40.)  The SSI application was denied initially in March 2013 and on reconsideration in December 2013.  (AR 41–55.)  An administrative hearing was held in May 2014 (AR 711–32); and on July 25, 2014, Administrative Law Judge (ALJ) James D'Alessandro denied Sanville's request to reopen the prior DIB claim and issued an unfavorable decision on Sanville's SSI claim (AR 19–28).  On July 22, 2016, the Appeals Council denied Sanville's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 9–12.)  Having exhausted her administrative remedies, Sanville filed the Complaint in this action on September 20, 2016.  (Doc. 4.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in

"substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited,

and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Before beginning the sequential analysis, ALJ D'Alessandro noted that Sanville's DIB claim was denied on the basis of res judicata and declined to reopen the claim, thereby limiting the remainder of his decision to Sanville's SSI claim. (AR 19–20.) At step one, the ALJ determined that Sanville had not engaged in substantial gainful activity since October 12, 2012, the date of her SSI application. (AR 22.) At step two, the ALJ found that Sanville had the following severe impairments: "status post cerebral vascular accident December 2010, a history of a fracture of the left shoulder in 2000, a history of alcohol abuse, anxiety[,] and depression." (*Id.*) At step three, the ALJ determined that none of Sanville's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 23–25.)

Next, the ALJ determined that Sanville had the RFC to perform "sedentary work," as defined in 20 C.F.R. § 416.967(a), except that she was "limited to only occasional overhead reaching with the left non-dominant upper extremity"; she needed "to avoid exposure to heights and to dangerous machinery"; and she was "limited to simple, repetitive[,] unskilled tasks." (AR 25.) Given this RFC, the ALJ found that Sanville was unable to perform any of her past relevant work. (AR 27.) Finally, the ALJ applied the Medical-Vocational Guidelines ("the Guidelines") at step five and determined that there were other jobs existing in significant numbers in the national economy that Sanville could perform. (AR 28.) The ALJ concluded

that Sanville had not been under a disability since the date her application was filed on October 12, 2012.  (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").  "Substantial evidence" is more than a mere scintilla; it means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Sanville claims the ALJ made three errors: (1) denying Sanville's DIB claim on res judicata grounds and declining to reopen the claim; (2) failing to include documented physical and mental limitations in his RFC determination; and (3) applying the Guidelines at step five, rather than obtaining testimony from a VE regarding jobs existing in the economy that Sanville could perform despite her nonexertional limitations. In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards. For the reasons explained below, the Court finds in favor of the Commissioner on the first issue and in favor of Sanville on the second and third issues. Accordingly, the Court remands for further proceedings and a new decision.

**I.      There Was No Error in Applying the Doctrine of Administrative Res Judicata to Deny the Prior DIB Claim, and the ALJ Did Not Err in Declining to Reopen that Claim.**

Sanville argues that the ALJ erred in finding that her DIB claim was barred by the doctrine of administrative res judicata and in declining to reopen that claim. Neither the law nor the relevant evidence supports either position.

## A. Administrative Res Judicata

Despite Sanville's claim to the contrary, "[i]t is by now well[]established that fundamental and familiar principles of *res judicata* apply in Social Security disability cases." *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1987) (citing *Benko v. Schweiker*, 551 F. Supp. 698, 701 (D. N.H. 1982)); *see also Moreno v. Astrue*, 366 F. App'x 23, 27 (11th Cir. 2010). "Congress has clearly provided by statute that *res judicata* prevents reappraisal of both the [Commissioner's] findings and h[er] decision in Social Security cases that have become final[.]" *Lively*, 820 F.2d at 1392 (citing 42 U.S.C. § 405(h)); *see Gavin v. Heckler*, 811 F.2d 1195, 1200 (8th Cir. 1987). The Social Security Administration (SSA)'s own Program Operations Manual System (POMS) states that res judicata "is a rule in administrative law . . . [that] applies at all levels of the claims process to avoid deciding an issue that we have previously decided based on the same facts, same issues, same parties[,] and same adjudicative period." POMS DI 40105.050.A, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0440105050 (last visited Aug. 25, 2017). The POMS further explains that administrative res judicata applies when a subsequent disability application is filed, and the last substantive denial occurs after the earnings requirement was last met. *Id.* As the ALJ stated in his decision, that factual scenario exists here: Sanville's last substantive denial of a prior DIB application (filed in August 2008) occurred in October 2008, after Sanville's date last insured of June 30, 2008. (*See* AR 19, 29–39, 43, 87.)

The SSA's regulations provide that, for the doctrine of res judicata to apply, the claimant must have received "a previous determination or decision under [the

Social Security Act] . . . on the same facts and on the same issue or issues, and this previous determination or decision [must have] become final by either administrative or judicial action." 20 C.F.R. § 404.957(c)(1); *see Bessette v. Comm'r of Soc. Sec.*, No. 09-CV-735 (TJM/DRH), 2010 WL 5677184, at *4 (N.D.N.Y. Dec. 14, 2010). An initial determination or decision of non-disability becomes "final" when it is not appealed within 60 days and has not been reopened. POMS GN 03101.040(A), (B), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0203101040 (last visited Aug. 25, 2017). Here, there is no evidence that the October 2008 denial of Sanville's prior DIB claim was appealed or reopened. Therefore, the ALJ did not err in finding that res judicata applied to bar that claim.

Citing *Delamater v. Schweiker*, 721 F.2d 50 (2d Cir. 1983), Sanville contends that res judicata does not apply here because the Commissioner's initial decision to deny benefits on her prior claim was made without a hearing and thus was more akin to an "administrative proceeding" than an "adjudicated action." (Doc. 25 at 2 (internal quotation marks omitted)); *see* Doc. 17 at 2–3.) The court in *Delamater*, 721 F.2d at 54, held that, because "[t]here was no hearing, no testimony, no subpoenaed evidence, no argument, [and] no opportunity to test any contention by confrontation," res judicata did not apply. That case is distinguishable, however, as it was the plaintiff in *Delamater* who tried to argue, without success, that res judicata barred the Secretary from terminating his benefits; whereas here, the Commissioner argues that res judicata should apply to bar the denial of Sanville's claim. Moreover, applying the decision in *Delamater* as Sanville seeks to apply it here, would comply neither with the regulations' explicit allowance of res judicata

where a hearing has not been held (*see* 20 C.F.R. §404.957(c)(1) (allowing res judicata where previous determination or decision became final "by either administrative or judicial action")), nor with the purpose of the Commissioner's regulations to provide a measure of finality to administrative determinations.

The court in *Delamater* did not consider the situation existing here, where a party had an opportunity to litigate and to receive judicial-type procedural protections but voluntarily chose to forego that right. Sanville chose to forego the opportunity for a hearing, which would have included the procedural protections that the court in *Delamater* found necessary to an application of res judicata. In *Harper v. Sullivan*, the Southern District of Ohio explained:

> In *Delamater*, the court was dealing with the general doctrine of administrative *res judicata*. It is generally true that before an administrative, as opposed to judicial, decision can be given *res judicata* effect, there must be some quasi-judicial proceedings involved, including the holding of a hearing. However, the issue presented in this case is not whether the general principles of administrative *res judicata* apply, but whether the [Commissioner] has correctly followed regulations[,] which explicitly deal with the effect of a claimant's failure to request an administrative hearing in connection with a previous application for disability benefits. Those regulations fully support the [Commissioner's] action taken in this case.
>
> The administrative review process which applies to Social Security disability claims is described in 20 C.F.R. § 404.900 *et seq.* Ordinarily, it consists of four steps: an initial determination, a reconsideration, a hearing before an [ALJ], and Appeals Council review. 20 C.F.R. § 404.900(a). Specific time periods are set forth for proceeding from one stage to the next, and claimants are specifically advised, in § 404.900(b), that the failure to take the next step within the stated time period forfeits the right to further administrative review and judicial review unless the claimant can demonstrate good cause for the failure to make a timely request for review. *The regulations also make clear that the decision at each step is a binding decision unless timely appealed.* 20 C.F.R. § 404.905 (initial determination); § 404.921 (reconsideration); 20 C.F.R. § 404.955 ([ALJ]'s decision); § 404.981 (Appeals Council decision).

> *In addition to prescribing the binding effect of an unappealed decision at each level the regulations also address the res judicata effects of such decisions.* 20 C.F.R. § 404.957(c)(1) permits an [ALJ] to refuse to consider one or more issues in a disability claim if the [Commissioner] has "made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action; . . . ." The regulations also set forth procedures and standards for reopening prior final determinations, which differ depending upon how long the prior decision has been final. 20 C.F.R. § 404.987 *et seq. This comprehensive regulatory scheme clearly governs each aspect of the [Commissioner's] procedures in a case, like this one, where there have been prior disability applications and denials of those applications which, through the claimant's own failure timely to request further review, have become administratively final and binding.*

No. C–2–90–530, 1991 WL 332506, at *2–3 (S.D. Ohio Nov. 18, 1991), *aff'd sub nom. Harper v. Sec'y of Health & Human Servs.*, 978 F.2d 260 (6th Cir. 1992) (emphases added). The court in *Harper* concluded: "The regulations do not require that a hearing be held before the doctrine of *res judicata*, as defined in 20 C.F.R. § 404.957(c), becomes applicable." *Id.* at *3. The Sixth Circuit similarly found in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997), stating: "A decision concerning a claimant's eligibility for social security benefits is an 'initial determination' under the social security regulations [which] is binding unless the claimant requests reconsideration or the Commissioner revises its decision. An initial determination is subject to the doctrine of administrative res judicata." (Citations omitted); *see Draper v. Sullivan*, 899 F.2d 1127, 1130 (11th Cir. 1990) (rejecting Commissioner's argument that res judicata did not apply because the SSA was not acting in a judicial capacity and the parties did not have an opportunity to litigate the issues); *Domozik v. Cohen*, 413 F.2d 5 (3d Cir. 1969) (where claimant's application was denied on the ground that disability was absent on the terminal

date of his insured status and where claimant failed to exercise his right to reconsideration and to a hearing, the denial was nevertheless res judicata of a subsequent application for the same benefits on the same grounds).

Sanville did not exhaust her administrative remedies in connection with her August 2008 DIB application. Thus she may not now invoke the jurisdictional provisions of § 405(g) to seek judicial review of the ALJ's decision to deny her current claim on the basis of res judicata. *See Tobak v. Apfel*, 195 F.3d 183, 187 (3d Cir. 1999) ("federal courts lack jurisdiction . . . to review the Commissioner's discretionary decision to decline to reopen a prior application or to deny a subsequent application on *res judicata* grounds"); *Neighbors v. Sec'y of Health, Educ. & Welfare*, 511 F.2d 80, 81 (10th Cir. 1974) ("where an applicant . . . has filed a second application raising a claim for relief previously passed upon in an earlier application and where such subsequent application was dismissed without hearing on the ground of res judicata, there is no 'final decision of the [Commissioner] made after hearing' and hence the court lacks jurisdiction to entertain a suit challenging such earlier decision"); *Gaston v. Richardson*, 451 F.2d 461, 465 (6th Cir. 1971) ("[The claimant] made no request [for a hearing] and [thus] her position here must be that repeated applications for benefits may be made without limit so long as, by her choice, no hearing is requested or had. We disagree with such contention.").

## B.     Reopening of Prior Claim

Even if the doctrine of res judicata may properly be applied, in cases where, as here, the claimant has failed to request a hearing or appeal during the time periods prescribed in the regulations, the Commissioner has discretion to reopen a

prior disability benefits application for "good cause" within four years of the date of notice of the initial determination. *See* 20 C.F.R. § 404.988(b). The SSA will find "good cause" to reopen if new and material evidence is furnished. 20 C.F.R. § 404.989(a)(1). Here, finding "no new and material evidence relevant to [Sanville's] prior application" (AR 20), the ALJ concluded that no good cause existed to reopen Sanville's prior claim.

Sanville makes no argument on this point, and for good reason: generally, federal courts lack jurisdiction to review an ALJ's decision not to reopen a prior claim for benefits because such a decision is not a final decision within the meaning of the Act. *See* 42 U.S.C. § 405(g); *Califano v. Sanders*, 430 U.S. 99, 107–08 (1977). There are two exceptions to this rule, one of which may apply here. When the ALJ, in denying a petition to reopen an earlier application, addresses the merits of that application, he is said to have constructively reopened the prior application. *See Byam v. Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003) ("[i]f the Commissioner reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened, and any claim of administrative res judicata to have been waived") (internal quotation marks omitted). Assuming without finding that the ALJ here constructively reopened Sanville's prior DIB claim, it is to no avail, as the ALJ's determination that Sanville presented no new and material evidence is supported by substantial evidence.

The evidence considered by the ALJ consists of the March 2013 opinions of nonexamining agency consultant Edward Schwartzreich, MD, and the October 2013 opinions of treating physician Jessie Reynolds, MD. (AR 19–20, 51–53, 704–05.) As

the ALJ explained (AR 19), Dr. Schwartzreich's opinions are limited to the period

covered by the "Current Evaluation" (AR 51), which refers to the October 2012 SSI

application.  There is no indication in the opinions that they considered or related to

the period up and until June 2008, Sanville's date last insured, which was over four

years before the filing of the DIB application currently under review.  Thus,

Dr. Schwartzreich's opinions are not material to the claim and do not constitute

good cause to reopen it.  Although Dr. Reynolds, on the other hand, states in her

opinions that they apply to the period beginning on June 30, 2008 (AR 705), the ALJ

correctly rejected that statement on the grounds that Dr. Reynolds did not treat

Sanville until almost two years later in February 2010 and Dr. Reynolds is not a

mental health specialist.  (AR 20.)  These findings are supported by substantial

evidence, and thus the Court finds that the ALJ appropriately determined that

Sanville failed to submit new and material evidence necessitating a reopening of

her prior DIB claim.

## II.    The ALJ's RFC Determination Is Not Supported by Substantial Evidence.

Next, Sanville claims that the ALJ's RFC determination is not supported by

substantial evidence because it does not adequately account for her deficits in fine

manual dexterity and limitation to one- to two-step tasks.  The Court agrees, as

discussed below.

### A.    Fine Manual Dexterity

In May 2012, Robert McLellan, MD, an examining physician specializing in

occupational medicine, opined that Sanville had "persistent . . . left hand grip and

fine motor coordination deficits" as a result of her stroke.  (AR 415.)  Dr. McLellan

particularly pointed out Sanville's "significant fine and gross motor deficits of the left hand," opining that she could only perform at "less than the 1st percentile for fine motor coordination." (*Id.*) Dr. McLellan further opined that Sanville had "significant deficits of the left hand and in hand positions in which she is able to apply power." (*Id.*) These opinions are based largely on the RFC assessment of examining occupational therapist Gregory Morneau, who recorded objective findings in an April 2012 report, including most notably that Sanville had "minimal grip force" in her left hand and tested within "less than [the] 1st percentile" for fine motor coordination. (AR 405; *see also* AR 406, 410.) Sanville's treating primary care physician, Dr. Reynolds, adopted these opinions in a May 2012 letter to the SSA, stating that Sanville "had significant persistent . . . left hand grip and fine motor coordination deficits" and that she "was performing at less than [the first] percentile for fine motor coordination." (AR 495.)

Despite noting Dr. Reynolds's statement that Sanville "had less than 1% fine motor coordination" as part of his step-two severity analysis (AR 23) and acknowledging OT Morneau's finding that Sanville scored "only 1%" on "fine dexterity testing" as part of his step-three listings analysis (AR 24), the ALJ did not include any manual dexterity limitations in his RFC determination (*see* AR 25). Moreover, even though three examining or treating providers—OT Morneau, Dr. McLellan, and Dr. Reynolds—opined that Sanville's manual dexterity limitations were significant, the ALJ did not analyze those particular opinions. The ALJ analyzed Dr. Reynolds's October 2013 opinion that Sanville "has markedly impaired functioning with regard to remembering locations and work-like

procedures," but did not discuss Dr. Reynolds's opinions regarding Sanville's

manual dexterity limitations.  (AR 27.)  Although the ALJ is not required to "have

mentioned every item of testimony presented to him or have explained why he

considered particular evidence unpersuasive or insufficient to lead him to a

conclusion of disability" when the evidence of record permits the court to "glean the

rationale" of an ALJ's decision, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.

1983), the ALJ is still required to consider all *significant* medical evidence,

particularly that of an examining provider such as Dr. McLellan,[1] *see Lopez v. Sec'y

of Dep't of Health & Human Servs.*, 728 F.2d 148, 150–51 (2d Cir. 1984) ("We have

remanded cases when it appears that the ALJ has failed to consider relevant and

---

[1] Although only briefly mentioned in Sanville's "Statement of Facts" (*see* Doc. 17-1 at 3–4), it is notable that the ALJ failed to analyze the May 2012 opinions of Dr. McLellan, an examining physician who specializes in occupational medicine, which are contained in a letter to Dr. Reynolds. Therein, Dr. McLellan opined that Sanville's most active problems were her shoulder pain and symptoms from her stroke including intermittent weakness in her left arm and leg and intermittent numbness in her left hand, left wrist/fingers, and left leg. (AR 413–15.) Dr. McLellan also noted that Sanville suffered from vertigo symptoms, including dizziness and lightheadedness, and depression/anxiety, though she reported that her depression was not an ongoing issue at that time. (AR 414–15.)  In conclusion, Dr. McLellan advised Dr. Reynolds as follows:

> I would suggest you emphasize [in Sanville's disability evaluation] that [she] had a right[-]sided cerebrovascular accident due to occlusion of the right carotid artery with good functional recovery with physical therapy but *significant persistent left leg and left hand grip and fine motor coordination deficits*.  In particular, I would point out *significant fine and gross motor deficits of the left hand with her performing at less than the 1st percentile for fine motor coordination*.  She also has *significant deficits of the left hand and in hand positions in which she is able to apply power*.  As well, her lightheadedness has resulted in falls and inhibit her ability to maintain a normal walking pace and would note that her gait is antalgic with limitations in her ability to carry weight.[]  Due to her motor weaknesses[,] she uses poor biomechanics to lift weights and is restricted in her ability to lift weights at different heights.  At her best[,] she can lift no more than about 20 pounds.

(AR 415 (emphases added).)  Despite these opinions regarding Sanville's limitations, Dr. McLellan noted that Sanville was independent in her basic activities of daily living and was able to care for her "many animals," including more than twenty chickens, two dogs, three cats, two birds, two rabbits, and seven ducks.  (AR 414.)  The Court does not analyze the ALJ's failure to evaluate these opinions because Sanville does not raise this as an issue in her motion, instead merely mentioning the failure in her "Statement of Facts."  (*See* Doc. 17; Doc. 17-1 at 3–4.)  However, given the Court's decision to remand on other grounds, as explained herein, the ALJ is instructed to analyze these opinions on remand.

probative evidence which is available to him." (citing *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975)); *see also* 20 C.F.R. § 404.1545(a)(3) ("We will assess your [RFC] based on all of the relevant medical and other evidence. . . . We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations."). Moreover, the Court is unable to "glean the rationale" from the ALJ's decision here with respect to Sanville's manual dexterity limitations because the ALJ did not analyze any of the three medical opinions which made findings on those limitations in his decision.

The only possible explanation provided by the ALJ for his omission of a manual dexterity limitation in his RFC determination is found within his listings analysis, where he states: "Dr. Reynolds noted that [Sanville] acknowledged the ability to perform such tasks as self-care/grooming, working word puzzles, taking care of farm animals[,] and even painting."  (AR 24.)  Sanville contends the ALJ erred in failing to adopt Dr. McLellan's opinion that Sanville had significant fine and gross motor deficits in the left hand, especially given that Dr. McLellan was an examining physician specializing in occupational medicine.  According to Sanville, this error was not harmless because "most unskilled sedentary jobs require good use of both hands and the fingers, i.e., bilateral manual dexterity."  (Doc. 17 at 6 (emphasis omitted) (citing SSR 96-9p, 1996 WL 374185 (July 2, 1996).)  The Court agrees, and finds the ALJ's justification for omitting a manual dexterity limitation deficient.  The ALJ makes no attempt to explain how, for example, caring for chickens or painting required fine motor coordination in Sanville's non-dominant

hand.  Presumably, Sanville painted with her dominant hand and could do much of the work caring for her chickens with that hand as well.  It is entirely possible (even likely), on the other hand, that a sedentary job—which the ALJ restricted Sanville to performing—would require fine motor coordination of both hands.  *See* SSR 96-9p, 1996 WL 374185, at *8 ("Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. . . .  Any *significant* manipulative limitation of an individual's ability to handle and work with small objects *with both hands* will result in a significant erosion of the unskilled sedentary occupational base." (second emphasis added)); SSR 85-15, 1985 WL 56857, at *7 (1985) ("As a general rule, limitations of fine manual dexterity have greater adjudicative significance--in terms of relative numbers of jobs in which the function is required--as the person's exertional RFC decreases.  Thus, *loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work*." (emphasis added)).  Accordingly, the ALJ erred in failing to include any manual dexterity limitations in his RFC determination.

### B.  Limitation to One- to Two-Step Tasks

The ALJ also erred in failing to consider whether to include a limitation to one- to two-step tasks in his RFC determination.  In March 2013, nonexamining agency consultant Dr. Schwartzreich opined that Sanville had mild restriction in activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, and pace.  (AR 49.)  Dr. Schwartzreich further opined that, due to cognitive issues, Sanville was limited

to retaining the concentration, persistence, and pace for only one- to two-step tasks for two hours over an eight-hour period throughout a 40-hour week.  (AR 52.)  Despite stating in his decision that he gave "significant weight" to Dr. Schwartzreich's opinions (AR 27; *see also* AR 25); without explanation, the ALJ did not include a limitation to one- to two-step tasks in his RFC determination, instead merely limiting Sanville to "simple, repetitive[,] unskilled tasks" (AR 25).

The Commissioner correctly argues that the ALJ is not required to accept all parts of an agency consultant's opinions.  (Doc. 24 at 14 (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).)  But here, the ALJ gave substantial weight to certain portions of Dr. Schwartzreich's opinions and seemingly no weight to others, *without any explanation at all*, leaving the Court to suppose that the ALJ was either unaware of Dr. Schwartzreich's opinion that Sanville was limited to one- to two-step tasks, or considered that limitation to be encompassed within the limitation contained in his RFC determination to "simple, repetitive[,] unskilled tasks."  (AR 25.)  Given this ambiguity regarding whether the ALJ's omission of a limitation to one- or two-step jobs was intended, the Court cannot say whether the ALJ's RFC determination is proper.  *See Schlattman v. Colvin*, Case No. 12 C 10422, 2014 WL 185009, at *8 (N.D. Ill. Jan. 14, 2014) (remanding for further proceedings and explaining: "it is possible that the ALJ may have consciously chosen to omit the one- to two-step limitation, . . . [b]ut there is no language in the ALJ's opinion to that effect and therefore no logical bridge that allows this Court to determine whether the failure to include the limitation was a conscious decision or a lapse in judgment" (internal quotation marks and citation omitted)).

Moreover, the ALJ's implicit finding, if made, that the limitation to one- to two-step tasks was encompassed within the limitation contained in his RFC determination to "simple, repetitive[,] and unskilled tasks," is incorrect, as it is possible that a job could involve tasks that, while simple, repetitive, and unskilled, required more than two steps to complete. *See McGriff v. Colvin*, No. 3:16-cv-911 (JAM), 2017 WL 3142336, at *3 (D. Conn. July 25, 2017) ("[T]here is a significant and now well-acknowledged difference between an RFC limitation to 'one-to-two-step tasks' and an RFC limitation to 'short, simple instructions.'" (citing *Wilson v. Colvin*, Case No. 16-cv-01971-WHO, 2017 WL 1861839, at *7 (N.D. Cal. May 9, 2017))); *see also Schlattman*, 2014 WL 185009, at *7 ("there is a significant difference between one- to two-step tasks and simple, routine, repetitive tasks"); *Navarro v. Astrue*, No. CV 10-217-PLA, 2010 WL 5313439, at *5 (C.D. Cal. Dec. 16, 2010) (RFC to perform "simple work" did not sufficiently encompass doctor's finding that plaintiff could perform only simple one- to two-step tasks).

The Commissioner argues that, even without knowing whether the ALJ intended to omit the limitation to one- to two-step tasks, the RFC determination is correct because the ALJ's finding that Sanville was limited to simple, repetitive, unskilled tasks is supported by substantial evidence, namely, the opinions of consultative examiner Kathryn Rickard, Psy.D. (Doc. 24 at 13 (citing AR 617–18).) But this is after-the-fact rationale for the ALJ's decision to omit the one- to two-step limitation from his RFC determination, as the ALJ himself never offered that rationale for his decision and, in fact, did not even analyze Dr. Rickard's opinions on the issue. It is well settled that "[the court] may not 'affirm an administrative

action on grounds different from those considered by the agency.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 89 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)); *see Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)).

While the ALJ was by no means required to adopt all the limitations found by agency consultant Dr. Schwartzreich, he was required to explain his basis for rejecting them if he chose to do so, given that he expressly gave significant weight to Dr. Schwartzreich's opinions in formulating the RFC. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) ("In order for this Court to effectively review an ALJ's decision to determine if it is supported by substantial evidence, the ALJ must discuss the evidence he considered which supports the result, as well as indicate the evidence which was rejected." (internal quotation marks omitted)); *Stanley v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 382, 395 (N.D.N.Y. 2014) ("While the ALJ is not required to reconcile every shred of evidence, the ALJ must acknowledge relevant evidence and explain his rejection of such evidence." (internal quotation marks omitted)); *Harden v. Comm'r of Soc. Sec.*, Civil Action No. 13-906, 2014 WL 4792294, at *4–5 (W.D. Pa. Sept. 24, 2014) (citing *Bobbitt v. Colvin*, No. 03:13–cv–01320–HZ, 2014 WL 2993738 (D. Or. July 1, 2014)). It is possible that the ALJ implicitly found that limiting Sanville to simple, repetitive, unskilled work adequately addressed a limitation to one- to two-step tasks; but that finding would be incorrect, as the former limitation does not necessarily account for the latter. *Harden*, 2014 WL 4792294, at *4; *McGriff v. Colvin*, 2017 WL 3142336, at *3.

## III. The ALJ Erred in Failing to Call for the Testimony of a VE at Step Five.

Finally, Sanville argues that the ALJ erred in applying the Guidelines at step five to determine that jobs existed in significant numbers in the national economy that Sanville could perform. Sanville claims her limitations in overhead reaching, fine manual dexterity, and completing more than two-step tasks—especially when combined with her restrictions to only sedentary work; no exposure to heights and dangerous machinery; and no more than simple, repetitive, and unskilled tasks—precluded use of the Guidelines and required the testimony of a VE at step five.

As explained above, at the fifth step of the sequential analysis, the burden shifts to the Commissioner to "produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform, considering not only his physical capability, but as well his age, his education, his experience[,] and his training." *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980); *see Butts*, 388 F.3d at 383. In meeting this burden, the Commissioner may rely on the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2. The Guidelines divide work into sedentary, light, medium, and heavy (or very heavy) categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. *Id.*; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996); *see also* 20 C.F.R. §§ 404.1567, 416.967. Each exertional category of work has its own Guideline, which then takes into account the plaintiff's age, education, and previous work experience. 20 C.F.R. Part 404, Subpart P, App. 2. Based on these factors, the Guidelines indicate

whether the claimant can engage in any other substantial gainful work that exists in the national economy. *Id.*

Generally, the result listed in the Guidelines is dispositive on the issue of disability. *Roma v. Astrue*, 468 F. App'x 16, 20–21 (2d Cir. 2012); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Chaparro v. Colvin*, 156 F. Supp. 3d 517, 536–40 (S.D.N.Y. 2016) (listing cases). However, "relying solely on the [Guidelines] is inappropriate when nonexertional limitations 'significantly diminish' plaintiff's ability to work so that the [Guidelines] do not particularly address plaintiff's limitations." *Vargas v. Astrue*, No. 10 Civ. 6306(PKC), 2011 WL 2946371, at *13 (S.D.N.Y. July 20, 2011) (quoting *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)); *see Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009). Where the claimant's nonexertional limitations "'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala*, 595 F.3d at 410 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)); *see Lawler v. Astrue*, 512 F. App'x 108, 111 (2d Cir. 2013); *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) ("We have explained that the ALJ cannot rely on the [Guidelines] if a non-exertional impairment has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert."). Stated differently, it is only in cases where "a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the [Guidelines]," that the ALJ must introduce the testimony of a VE that jobs

exist in the economy that claimant can perform.  *Bapp*, 802 F.2d at 603; *see* SSR 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983) (holding that, when a claimant's RFC "does not coincide" with the exertional criteria of any of the exertional ranges—including sedentary, light, medium, or heavy—and when it is "not clear" how extensively claimant's limitations erode the occupational base, "the [ALJ] will need to consult a [VE]").  The appropriateness of applying the Guidelines and the necessity for VE testimony must be determined on a case-by-case basis.  *Bapp*, 802 F.2d at 605.

Here, the ALJ relied exclusively on the Guidelines to determine that jobs exist in significant numbers in the national economy that Sanville can perform.  (AR 28.)  The ALJ stated as follows:

> If [Sanville] had the [RFC] to perform the full range of sedentary work, considering [her] age, education, and work experience, a finding of 'not disabled' would be directed by [the Guidelines].  However, the additional limitations have little or no effect on the occupational base of unskilled sedentary work.  A finding of 'not disabled' is therefore appropriate under the framework of [the Guidelines].

(*Id.*)  Although a sentence or phrase appears to be missing from this finding (before "the additional limitations" and after "However"), the ALJ appears to have concluded that, although Sanville's ability to perform the full range of sedentary work is affected by additional limitations, these limitations have little or no effect on the occupational base of unskilled sedentary work.  The ALJ gave no explanation for this conclusion.  (*See id.*)

As discussed above, the ALJ stated in his RFC determination that Sanville had the following nonexertional limitations: she was limited to "only occasional overhead reaching with the left non-dominant upper extremity"; she "need[ed] to avoid exposure to heights and to dangerous machinery"; and she was "limited to

simple, repetitive[,] unskilled tasks." (AR 25.) At step five, however, the ALJ did not explain his apparent conclusion that these nonexertional limitations had "little or no effect" on the range of work open to Sanville. (AR 28.) This was error. In relying on the Guidelines rather than on the testimony of a VE, the ALJ was obligated to explain his finding that Sanville's nonexertional limitations had only a negligible impact on the range of work permitted by her exertional limitations. *See, e.g., Hernandez v. Colvin*, No. 13–CV–03035 (RPP), 2014 WL 3883415, at *15 (S.D.N.Y. Aug. 7, 2014) ("Although an ALJ has discretion to conclude that the [Guidelines] adequately address[] a plaintiff's non-exertional impairments, courts in this Circuit have held that the ALJ is obligated to explain such a finding."); *Cruz v. Colvin*, No. 12 Civ. 7346(PAC)(AJP), 2013 WL 3333040, at *19 (S.D.N.Y. July 2, 2013) (where ALJ "treated the [Guidelines] as dispositive, despite evidence in the record of [claimant's] nonexertional limitations," finding that these nonexertional limitations "did not significantly reduce, or only had a negligible impact on, [claimant's] work capacity," ALJ was "obligated to explain that finding").

The ALJ's finding that Sanville was restricted to "only occasional overhead reaching with the left non-dominant upper extremity" (AR 25), in and of itself, necessitates testimony from a VE to determine the degree to which this reaching limitation impacts the occupational base of sedentary jobs Sanville could perform. In *Selian*, 708 F.3d at 422, the Second Circuit found error where the ALJ "did not affirmatively determine whether or not [the claimant's] reaching limitation was negligible, despite finding that [the claimant] could reach only 'occasionally,'" and did "not determin[e] whether this reaching limitation precluded reliance on the

[Guidelines]." The court noted that, "[r]eaching is 'required in almost all jobs,' and a reaching limitation 'may eliminate a large number of occupations a person could otherwise do.'" *Id.* (quoting SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985)). In *Saiz v. Barnhart*, the Tenth Circuit similarly found error, noting that "[t]he presence of [a reaching] limitation, specifically in connection with a sedentary RFC, is not a technical or formalistic point," given that "[a] sedentary RFC already 'represents a significantly restricted range of work.'" 392 F.3d 397, 400 (10th Cir. 2004) (quoting SSR 96-9p, 1996 WL 374185, at *3). Furthermore, Social Security Ruling 85-15 states that "the assistance of a V[E] may be needed to determine the effects of the [reaching] limitations." 1985 WL 56857, at *7. Applied here, although the ALJ may be correct that the full range of sedentary work would not be significantly reduced by the restriction on Sanville's ability to reach overhead with her non-dominant upper extremity, the only support for this assumption is "the ALJ's own impression," which is insufficient. *Candelaria v. Barnhart*, 195 F. App'x 2, 4 (1st Cir. 2006); *see* AR 28. The ALJ should have consulted with a VE to determine whether, despite Sanville's reaching limitations, she would nonetheless be able to perform jobs existing in significant numbers in the national economy.

Given this finding, the Court need not analyze whether the ALJ erred in failing to consult a VE with respect to Sanville's limitations in fine manual dexterity and ability to perform only one- to two-step tasks. The existence of these limitations, however, especially when combined with Sanville's reaching limitations and the other limitations contained in the ALJ's RFC determination (*see* AR 25), further establish a need for VE testimony at step five.

**<u>Conclusion</u>**

For these reasons, the Court:

(1)  GRANTS the Commissioner's motion (Doc. 24) with respect to application of the doctrine of res judicata and reopening of the prior DIB claim, and DENIES the motion on the remaining issues;

(2)  GRANTS Sanville's motion (Doc. 17) with respect to the ALJ's RFC determination and step-five analysis, and DENIES the motion on the remaining issues; and

(3)  REMANDS for further proceedings and a new decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 20th day of September 2017.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge